**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JANE DOE,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**ELLIOT CLEAVER,**<br><br>**Defendant.** | ) | **No. 25 C 9331**<br><br>**District Judge Jeremy C. Daniel**<br>**Magistrate Judge Gabriel A. Fuentes** |

**ORDER**

Before the Court is Plaintiff's Motion to Compel a Physical Examination Under Federal Rule of Civil Procedure 35 ("Motion to Compel"; D.E. 40). The motion is fully briefed (D.E. 47, 50) and the Court heard oral argument on August 20, 2026. (D.E. 56.) The Court considers this motion in its broad discretion to manage discovery under the referral (D.E. 17). *Jones v. City of Elkhart*, 737 F.3d 1107, 1115 (7th Cir. 2013).

## I. Background

Plaintiff alleges that she was violently sexually assaulted by Defendant in his hotel room during the early morning hours of August 23, 2021. (Cmplt.; D.E. 1, ¶¶ 20-21.) That morning, Plaintiff was taken to the hospital, where she underwent a sexual assault forensic examination. (Cmplt., ¶¶ 28-29.) Analysis of evidence collected from the examination revealed the presence of male DNA on the internal vaginal swabs from Plaintiff. (Motion to Compel, Ex. A and B.)

Defendant denies having sexually assaulted Plaintiff (Ans.; D.E. 15, ¶ 21) and contends he did "not engage in any act that is [a] contemplated violation of the Illinois Civil No Contact Order." (Motion to Compel, Ex. C, Def.'s Ans. to Pl.'s Interrogatories at 4-5.) Rather, in a written

discovery response, Defendant describes his interaction with Plaintiff as follows: "[Plaintiff and Defendant] were tired, kissed, discussed sexual relations, and then fell asleep." (*Id.* at 6.) He also denied having any contact with Plaintiff's mouth, anus, or other body part. (Motion to Compel, Ex. D, Def.'s Resp. to Pl.'s Requests for Admission at 2-4.) Despite stating they only "discussed sexual relations," Defendant also disclosed that he touched his penis to Plaintiff's vagina. (*Id.* at 2-3.) Defendant described the encounter as "consensual romantic activities with sexual contact" … "but without penetration." (Opp.; D.E. 47 at 2-3 citing D.E. 40 Ex. C No. 9 and Ex. D Nos. 2, 3, and 5.)

Plaintiff seeks an order requiring a physical examination under Rule 35 to conduct a buccal swab test on Defendant to collect his DNA, so that further testing can determine whether his DNA matches the male DNA from the specimen taken from Plaintiff's internal vaginal swabs. For the reasons that follow, the Court grants the Motion to Compel.

## II. Analysis

A court may rely on Federal Rule of Civil Procedure 35 to compel a party whose physical condition is in controversy to submit to a physical examination. Fed. R. Civ. P. 35. Rule 35 provides in relevant part that the "court where the action is pending may order a party whose mental or physical condition – *including blood group* – is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner."[1] Fed. R. Civ. P. 35(a)(1) (emphasis added). Such an order may issue only for "good cause," *id.* at (a)(2)(A), which requires a "greater showing of need …than under the other discovery rules." *Schlagenhauf v. Holder*, 379

[1] The Advisory Committee Notes reveal that the 1970 Amendment "expressly includes blood examination within the kinds of examinations that can be ordered under the rule." Fed. R. Civ. P. 35 advisory committee's note to 1970 amendment.

U.S. 104, 118 (1964). The decision is within the court's discretion. *Bucher v. Krause*, 200 F.2d 576, 584 (7th Cir. 1952).

Courts applying Rule 35 to a request for DNA sampling generally have followed *McGrath v. Nassau Health Care Corp.*, 209 F.R.D. 55, 60-62 (E.D.N.Y. 2002), as guidance for applying Rule 35's "good cause" standard.[2] Under that guidance, the movant must show: (1) relevance of the DNA evidence, (2) no undue infringement of privacy rights from obtaining the sample, and (3) a reasonable possibility of obtaining a match. *See id.* (holding the parties shall submit DNA samples for testing after defendant met his burden showing a reasonable possibility of a match between the DNA profiles on the subject blanket and the parties' DNA profiles).

**A. Defendant's DNA Is Relevant and In Controversy.**

Defendant argues that only consent is disputed and that DNA is not relevant to consent, but no matter what position he takes at trial as to consent, he already has provided written discovery responses that make the DNA results probative of a relevant issue in the case: whether vaginal sexual penetration occurred. Defendant's shifting discovery responses cloud that question, but minimally, they reflect Defendant's denial of such penetration, insofar as his interrogatory responses describe kissing and deny "sexual conduct or sexual penetration," while his responses to admission requests concede that his "penis briefly touched" Plaintiff's vagina and deny ejaculation. *See* Motion to Compel, Exhs. C, D. Furthermore, a defendant who denies a physical

---

[2] *See D'Angelo v. Potter*, 224 F.R.D. 300 (D. Mass. 2004), *Strong v. Wisconsin*, 2007 WL 5445863 (W.D. Wis. 2007), and *Ashby v. Mortimer*, 329 F.R.D. 650 (D. Idaho 2019) (applying the *McGrath* factors and granting Rule 35 request for DNA); *Tate v. Doe*, No. 20-CV-704-JDP, 2025 WL 723370 (W.D. Wis. Mar. 6, 2025), *objections overruled sub nom. Tate v. John Doe (Corr Officer)*, No. 20-CV-704-JDP, 2026 WL 788210 (W.D. Wis. Mar. 20, 2026) (denying the Rule 35 request for DNA samples of the individuals who were not parties to the lawsuit due to lack of jurisdiction); *Harris v. Athol-Royalston Reg'l Sch. Dist. Comm.*, 206 F.R.D. 30 (D. Mass. 2002) (denying Rule 35 request of hair on a piece of tape belonging to a certain person as a speculative fishing expedition).

condition as his defense places it in controversy. *Ashby,* 329 F.R.D. at 654 (finding defendant's DNA central to the paternity dispute and satisfying the "controversy" requirement). The DNA specimens may resolve the factual dispute of whether vaginal penetration – a question that Defendant's discovery responses leave in controversy – occurred.

Further as to relevancy for purposes of Rule 35 "good cause," Plaintiff points to a male DNA sample found in the internal vaginal swabs collecting evidence from the vaginal walls, not Plaintiff's clothes or other body parts. This profile may or may not match Defendant, but the parties will know that relevant information once Defendant's DNA is collected, tested, and compared to the sample found in Plaintiff's swabs. And if the testing shows a match, Plaintiff's will have an argument that her assertion of vaginal penetration by Defendant is more probable than not, and that so is her allegation of a violent sexual assault. At oral argument, defense counsel sought to argue that whether penetration occurred is a separate issue not relevant to whether a violent sexual assault occurred, but the Court disagrees. Absence of penetration is inconsistent with a sexual assault that Plaintiff describes as involving vaginal penetration. Whether penetration occurred is at least a threshold question when Plaintiff argues, as she may, that when it occurred, it happened as part of a violent attack. At the very least, a DNA match could also be part of an attack on Defendant's credibility, given his sworn discovery response claiming that his sexual encounter with Plaintiff that night amounted only to kissing, discussion about sex, and sleep. *See* Motion to Compel, Exh. C (response to Interrogatory No. 9). Evidence of a match would be relevant when Defendant is on the witness stand or if used to show untruthfulness in connection with his sworn discovery answers.

In sum, the DNA profile of Defendant is a relevant issue in this case and is, at this phase of the case, "in controversy" for purposes of Rule 35.

**B. The Proposed Buccal Swabbing Does Not Unduly Infringe Privacy.**

A buccal cheek swab is a minimal intrusion on individual privacy. *Maryland v. King*, 569 U.S. 435, 446 (2013); *see also McGrath*, 209 F.D.R. at 61 (holding that a buccal cheek swab is "only a minimal intrusion on the party's privacy rights"). The Court also notes that Rule 35 explicitly mentions "blood group," a determination made by the extraction of a blood sample from a person's bloodstream, as opposed to a mere swab of the inside of a person's cheek.[3] Plaintiff's Reply describes a minimally invasive process to collect Defendant's DNA and chain of custody for the sample, including the buccal swab examination performed by a certified Sexual Assault Nurse Examiner, observed by a former FBI Special Agent, and analyzed by Bode Technology (a forensic DNA laboratory that regularly serves law enforcement agencies). (Reply; D.E. 50 at 10.) As reiterated at oral argument, both parties indicated in their briefing that they are prepared to meet and confer about the content of a protective order necessary to limit use and disclosure of the DNA evidence and to otherwise protect Defendant's privacy rights. (Opp. at 19; Reply at 14.) The Court cannot find that the proposed DNA sampling process here would unduly infringe Defendant's privacy.

**C. The Case Presents a Reasonable Possibility of a DNA Match.**

The facts of this case indicate a reasonable possibility that the buccal swab sample taken from Defendant would match the profile recovered from Plaintiff's internal vaginal swab. Defendant argues that the male DNA could be from Plaintiff's ex-boyfriend, with whom she is said to have had sexual relations three days earlier. But Plaintiff still alleges that Defendant forcibly

[3] Defendant's suggestion at oral argument that his interest against the proposed buccal swabbing is of constitutional dimension was not persuasive to the Court, insofar as the Fifth Amendment right against self-incrimination protects only compelled testimonial evidence, and DNA evidence is not testimonial. *See Schmerber v. California*, 384 U.S. 757, 760-61 (1966) (discussing testimonial limitation on Fifth Amendment self-incrimination right in the context of the obtaining of blood samples).

sexually assaulted her, and the Rule 35 "good cause" standard, as a threshold for the testing to take place in the first instance, does not require proof beyond a reasonable doubt, or by clear and convincing evidence, that the DNA recovered from Plaintiff matches Defendant's. Only a reasonable possibility is required to establish Rule 35 good cause. Defendant having pointed the finger at the boyfriend is not enough to eliminate the reasonableness of the possibility that the DNA recovered from the Plaintiff might indeed be his. Defendant already has gone so far as to admit that he was with Plaintiff on the night she says she was sexually assaulted, and that on that night, his penis touched but did not penetrate her vagina. That admission alone is enough to persuade the Court of the reasonable possibility of a match, in that Defendant's admission is akin to an admission that he smoked a cigarette but did not inhale, i.e., a carefully crafted account that might well be untrue. His admission is enough to suggest that a reasonable possibility of a DNA match exists for purposes of the "good cause" requirement of Rule 35.

Defendant's attempt to throw shade on the probity of the DNA testing process under the circumstances of this case is similarly unavailing. Male DNA was found inside Plaintiff's vagina. Plaintiff explains, and the Court agrees, that DNA testing can be done on that male DNA, and that Y-STR testing is commonly and reliably used to analyze samples when there is a large amount of female DNA relative to male DNA, as is the case here.

## CONCLUSION

For the foregoing reasons, the Plaintiff's Motion to Compel a Physical Examination Under Federal Rule of Civil Procedure 35 (D.E. 40) is granted. Defendant is ordered to submit to a buccal swab DNA test. The Court also grants Defendant's uncontested request for a protective order and further orders the parties to meet and confer and submit a proposed protective order in Word to

the Court's Proposed Order email box by September 11, 2026, with the testing to occur no later than September 18.

**SO ORDERED.**

**ENTER:**

**GABRIEL A. FUENTES**
**United States Magistrate Judge**

**DATED: August 28, 2026**